IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KAREN CARTER                                                                                         PLAINTIFF

v.                                           Case No. 4:18-cv-00444-KGB

MILITARY DEPARTMENT
OF ARKANSAS, *et al.*                                                                              DEFENDANTS

# ORDER

Before the Court are defendants' motions to dismiss (Dkt. Nos. 5, 15). Plaintiff Karen Carter filed suit in this matter asserting claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-3 and 2000e-5(g) ("Title VII") (Dkt. No. 1). Ms. Carter responded to both motions to dismiss (Dkt. Nos. 9, 17). Further, defendants filed a motion to substitute party (Dkt. No. 22), to which no response has been filed. For the following reasons, the Court grants in part and denies in part defendants' motions to dismiss (Dkt. Nos. 5, 15), and the Court denies as moot defendants' motion to substitute party (Dkt. No. 22).

## I.      Overview

### A.      Pending Motions

Defendants Arkansas Military Department ("AMD") employees Jodi Porterfield and Stanley Crisp, in their individual and official capacities, and the Arkansas Department of Emergency Management ("ADEM") employee Tina Owens, in her individual and official capacity, now move to dismiss Ms. Carter's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants maintain that Ms. Carter fails to state a claim for retaliation on which relief can be granted, that defendants in their individual capacity are not subject to liability under Title VII, and that Ms. Carter's remaining claims should be dismissed under Rule 12(b)(6) (Dkt. No. 5, at 1-2). In addition, AMD and AMD defendant General Mark H. Berry, in his individual and

official capacity, also move to dismiss Ms. Carter's claims pursuant to Rule 12(b)(6), claiming that Ms. Carter fails to state a claim for retaliation upon which relief can be granted, that General Berry in his individual capacity is not subject to liability under Title VII, that official capacity claims against AMD defendants should be dismissed as redundant to Ms. Carter's claims against AMD, and that all of Ms. Carter's remaining claims should be dismissed under Rule 12(b)(6) (Dkt. No. 15, at 1-2).

## B. Allegations From Complaint

In her complaint, Ms. Carter purports to bring Title VII claims against the AMD and General Berry, Ms. Porterfield, Mr. Crisp, and Ms. Owens in their individual and official capacities (Dkt. No. 1). Ms. Carter contends that General Berry is the Adjutant General of the Military and responsible for supervision of all employees, including Ms. Carter (*Id.*, ¶ 3). Ms. Carter contends that Ms. Porterfield is the Chief Military Fiscal Officer and directly responsible to General Berry (*Id.*). She alleges that Mr. Crisp is the Director of Public Safety, a division of the Military (*Id.*), and that Ms. Owens is the Deputy Director of the ADEM, a division of the Military directly responsible to General Berry (*Id.*).

Ms. Carter alleges that "[d]efendants have continually discriminated against Plaintiff by retaliating against her for her actions to protect her civil rights by complaining about employment discrimination from March 30, 2015, through January 11, 2018" (*Id.*, ¶ 4). Ms. Carter claims she filed a charge with the Equal Employment Opportunity Commission ("EEOC") "charging Defendants with actions of discrimination stated herein following an Administrative Order of reinstatement to employment dated October 4, 2017, and her re-employment with the Military on October 18, 2016, and the retaliatory treatment by the Defendants thereafter" (*Id.*, ¶ 5). On April

2

6, 2018, the EEOC issued a notice of right to sue (*Id.*, ¶ 7), and Ms. Carter filed her complaint on July 5, 2018 (Dkt. No. 1).

As it relates to her claim, Ms. Carter alleges that, on April 6, 2015, she filed "a grievance alleging disparate treatment, discrimination, harassment and hostile work environment." (*Id.*, ¶ 8). She alleges that, four days later, she was placed on suspension for 10 days for allegedly violating "Agency policies." (*Id.*). On April 28, 2015, Ms. Carter filed another grievance as a result of the 10 days of suspension on April 10, 2015. Also on April 28, 2015, Ms. Carter was given a six month performance improvement plan (*Id.*, ¶ 9).

On June 8, 2015, Ms. Carter received a termination letter that was dated May 21, 2015, which she maintains was given for, "among other things, . . . non-compliance with the Performance Improvement Plan." (*Id.*, ¶ 10). She filed a third grievance regarding her termination.

Ms. Carter alleges that the Military "combined the three grievances and adjudicated all at one hearing" and upheld her termination (*Id.*, ¶ 11). She appealed to General Berry, who upheld her termination (*Id.*).

Ms. Carter asserts that, on appeal to the State Employee Grievance Appeal Panel ("SEGAP"), under the State Department of Finance and Administration ("DF&A"), the Military's termination decision was reversed (*Id.*, ¶ 12). Ms. Carter claims the reversal was "based on the Military's retaliation against Plaintiff." (*Id.*). The Military then appealed the SEGAP decision to DF&A's Chief Fiscal Officer who affirmed the SEGAP decision (*Id.*, ¶ 13). Ms. Carter maintains that DF&A's Order "directed reinstatement of Plaintiff in a comparable position she held at the time of termination, backpay, benefits and to be paid an earned special merit bonus." (*Id.*). She also alleges that her "negative work history placed in her personnel file as a result of the grievances" was to be "removed within one week of the Order," that proof was to be given to Ms.

Carter that the information was removed, and that the Military was to give to Ms. Carter a neutral job reference (*Id.*). Ms. Carter claims that the "negative information included that produced within the Military and that disseminated elsewhere." (*Id.*)

Ms. Carter alleges that, on October 18, 2016, the Military issued a "Memorandum reassigning her from the directorate State Resources to the Department of Public Safety ('DPS')" (*Id.*, ¶ 14). She maintains that the job she was assigned "had no duties," that she "did not even have a computer to work with," and that she had "no job to perform." (*Id.*). She also alleges that Mr. Crisp told her that he did not really want her there and had no work for her to do (*Id.*).

Then, Ms. Carter alleges she was sent to Camp Robinson Airfield with firefighters, sat there, and did nothing (*Id.*, ¶ 15). She alleges that the "lack of any job assignment was in retaliation" for her "protected activity in filing grievances" (*Id.*).

On January 31, 2017, Ms. Porterfield emailed Ms. Carter, told her she had an "offer" for her and asked to meet with her (*Id.*, ¶ 16). Ms. Carter maintains that, at that meeting, Ms. Porterfield "did not have an offer, but a directive to move to a different job with the Deputy Chief of Staff Personnel, to a position titled Human Resources Program Representative." (*Id.*, ¶ 17). According to Ms. Carter, Ms. Porterfield told her she "would not be promoted in that office." (*Id.*). The effective date of the directive was February 6, 2017 (*Id.*).

In that position, Ms. Carter "did some typing, typed Certificates of Promotions for Soldiers, scanned and uploaded documents, and typed form documents on a typewriter with standard information, such as names, being typed on the forms." (*Id.*, ¶ 18). She maintains that the duties of that position were "nothing like" the duties she "previously performed, prior to her termination, as a Human Resources Program Representative." (*Id.*).

Ms. Carter worked in that position until approximately July 17, 2017, when she was transferred to ADEM, under Ms. Owens (*Id.*, ¶ 19). Ms. Carter's job title was Policy Development Coordinator (*Id.*). According to Ms. Carter, she was also supposed to be an Administrative Assistant to Deputy Director Ms. Owens (*Id.*).

As the Policy Development Coordinator, Ms. Carter "wrote policy manuals for employees, such as the policy on drug testing" (*Id.*, ¶ 20). Ms. Carter claims she "was treated in the same manner as in her previous employment, as an outcast." (*Id.*). She claims that Ms. Owens "rarely spoke to her and almost never assigned her job duties" and "gave her nothing to do as Administrative Assistant," despite Ms. Carter asking for work to do (*Id.*).

Ms. Carter contends that she was on six months of probation with her employment at ADEM (*Id.*, ¶ 21). During her three month evaluation on October 20, 2017, Ms. Carter contends that she was told she was "doing 'very well'" (*Id.*). Then, Ms. Carter contends that, on or about January 11, 2018, which was one week before the end of the six months of probation, Ms. Owens informed her that she was being let go because "[i]t's just not a good fit." (*Id.*). At that time, Ms. Carter maintains she was "escorted from the Building." (*Id.*).

Then, approximately 14 months after her DF&A ordered reinstatement, Ms. Carter contends that she "was again terminated, but under a probationary period termination from which is not grievable under the State system." (*Id.*, ¶ 22). Ms. Carter alleges that this termination after her reinstatement was retaliatory due to her previously filing grievances in violation of 42 U.S.C. § 2000e-3 (*Id.*, ¶ 23). Ms. Carter also alleges that the "Military is currently giving negative job references" for her and that, as a result, she has been "unable to secure other employment in her chosen field." (*Id.*, ¶ 24). Ms. Carter asserts that she worked for the military for more than 12 years and as an employee of the State of Arkansas for more than 19 years (*Id.*).

Ms. Carter seeks "damages in the form of lost wages, lost employment benefits from January 11, 2018, mental anguish and pain and suffering" from April 2015 through the filing of this action (*Id.*, ¶ 25). She also seeks injunctive relief against defendants with respect to the alleged negative employment references (*Id.*).

### II. Motion To Dismiss Under Rule 12(b)(6)

Defendants move to dismiss certain of Ms. Carter's claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. Nos. 5, 15). For the reasons discussed below, the Court grants in part and denies in part the motions to dismiss (Dkt. Nos. 5, 15).

#### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. General Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint

6

must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

When ruling on a Rule 12(b)(6) motion to dismiss, a district court generally may not consider materials outside the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The district court "may, however, consider some public records, materials that do not contradict the complaint or materials that are 'necessarily embraced by the pleadings.'" *Noble Sys. Corp.*, 543 F.3d at 982 (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Accordingly, this Court may consider the charges of discrimination and documents filed with the EEOC in ruling on defendants' Rule 12(b)(6) motions to dismiss. *See Faisbisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (determining that "an EEOC charge is part of the public record, and thus the motion to dismiss was not converted to one for summary judgment by the attachment of a copy of the EEOC charge."). Here, the charge filed by Ms. Carter is not before the Court. Ms. Carter submits only her notice of right to sue letter (Dkt. No. 1, at 9).

### B. Individual Liability Under Title VII

The Court dismisses Ms. Carter's Title VII retaliation claims against defendants in their individual capacities. Ms. Carter concedes this point (Dkt. Nos. 10, at 5; 18, at 5). Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). "[T]he obvious purpose of th[e] agent provision [of § 2000e(b)] was to incorporate respondeat

7

superior liability into the statute." *Grissom v. Waterloo Indus.*, 902 F. Supp. 867, 870 (E.D. Ark. 1995) (alterations in original) (citation omitted). The Eighth Circuit Court of Appeals has consistently held that supervisors may not be held individually liable under Title VII. *Griffin v. Webb*, 653 F. Supp. 2d 925, 933 (E.D. Ark. 2009) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 931 (8th Cir. 2007) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000))). Thus, "if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action." *Moss v. W & A Cleaners*, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000). Accordingly, the Court dismisses without prejudice Ms. Carter's Title VII retaliation claims against defendants in their individual capacities.

## C. Official Capacity Claims Under Title VII

Defendants move to dismiss Ms. Carter's claims against defendants in their official capacities as redundant of her claims against AMD (Dkt. No. 16, at 5). Ms. Carter opposes this motion, seeming to suggest that it is an open question in the Eighth Circuit whether individual employees may be liable under Title VII when the employee defendant is the Title VII plaintiff's supervisor (Dkt. No. 18, at 6).

The Court has not found, nor have the parties cited, any Eighth Circuit Court of Appeals rulings on the issue of whether an employer and a supervisor sued in his or her official capacity are subject to liability under Title VII. The Court acknowledges, however, that there have been Title VII cases before the Eighth Circuit with both an employer and a supervisor as named defendants, without this issue being raised. *See, e.g., Jackson v. Ark. Dep't of Educ., Vocational and Technical Educ. Div.,* 272 F.3d 1020 (8th Cir. 2001); *Day v. Johnson,* 119 F.3d 650 (8th Cir. 1997); *Hall v. Gus Constr. Co. Inc.,* 842 F.2d 1010 (8th Cir. 1988).

Although the Court did not find any Eighth Circuit case on this issue, the appellate court has stated that agency principles do apply in the Title VII context. *Kramer v. Logan County School District No. R-1,* 157 F.3d 620, 625 (8th Cir. 1998). "Employer" as defined in Title VII includes "a person engaged in an industry affecting commerce. . . and any agent of such a person." 42 U.S.C. § 2000e(b). Given this definition, many district courts have concluded that it would be duplicative to bring claims against both an employer and a supervisor who is acting as an agent of the employer. Although "[s]upervisory employee[s] may be joined as a party defendant in a Title VII action, [the] employee must be viewed as being sued in his capacity as the agent of the employer, who is alone liable for a violation of Title VII." *Bales v. Wal–Mart,* 143 F .3d 1103, 1111 (8th Cir. 1998). As a result, many district courts have dismissed claims against individual supervisors named as Title VII defendants in their official capacity as redundant to claims against the employer. *See, e.g., Caruso v. City of St. Louis*, No. 4:16 CV 1335 RWS, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (Title VII claim against individual sued in his official capacity dismissed as duplicative of the same claim pursued against the plaintiff's employer); *Bonenberger v. City of St. Louis*, No. 4:16CV00788 PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (same); *Glass v. Doe*, No. 806CV558, 2007 WL 2410542, at *3 (D. Neb. Aug. 21, 2007) (same); *Bergfeld v. Board of Election Comm'rs for City of St. Louis*, No. 4:06cv1025 DDN, 2007 WL 5110310, at *3 (E.D. Mo. Apr. 5, 2007) (same); *Henderson v. St. Louis Cty.*, No. 4:05 CV 2081 CDP, 2006 WL 3538799, at *1 (E.D. Mo. Dec. 7, 2006) (same); *Green v. City of St. Louis,* No. 4:05CV198 JCH, 2006 WL 1663439, at *10 (E.D. Mo. June 15, 2006) (same); *Coller v. State of Mo. Dep't of Econ. Dev.*, 965 F.Supp. 1270, 1274–75 (W.D. Mo. 1997) (same).

As a result, this Court dismisses Ms. Carter's Title VII claims against General Berry, Ms. Porterfield, and Mr. Crisp in their official capacities as duplicative of her claims against AMD.

Ms. Carter has not named ADEM as a defendant in this case, but for these same reasons, the Court construes Ms. Carter's claims against Ms. Owens in her official capacity as Title VII claims against ADEM, the entity Ms. Carter alleges employed Ms. Owens (Dkt. No. 1, ¶ 3). Because Ms. Carter has not named ADEM as a defendant, the Court declines at this time to dismiss Ms. Carter's Title VII claims against Ms. Owens in her official capacity but construes those claims as being against ADEM.

### D. Failure To State A Claim Upon Which Relief Can Be Granted

A *prima facie* case of retaliation under Title VII requires a plaintiff to show: "(1) that he engaged in statutorily protected activity; (2) [that he suffered] an adverse employment action; and (3) a causal connection [existed] between the adverse employment action and the protected activity." *Evans v. Kansas City, Mo. Sch. Dist.,* 65 F.3d 98, 100 (8th Cir. 1995), *cert. denied,* 517 U.S. 1104 (1996). An employer may not discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). Defendants move to dismiss Ms. Carter's retaliation claim alleging that, for various reasons, she fails to plead sufficiently a *prima facie* case.

#### 1. Retaliation Claim Against AMD

Defendants move to dismiss Ms. Carter's retaliation claim against AMD alleging that Ms. Carter fails to allege a materially adverse employment action by AMD while employed at AMD (Dkt. No. 16, at 8). Further, defendants contend that Ms. Carter also fails to allege a causal connection between her alleged engagement in a protected activity and a materially adverse employment action by AMD (*Id.*, at 9).

The Supreme Court clarified the term "adverse employment action" in *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006). Prior to *Burlington Northern,* many courts

took a relatively restrictive approach to the phrase, holding for example that an adverse employment action occurred only where there were "tangible change[s] in duties or working conditions that constituted a material employment disadvantage." *Manning v. Metro. Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir. 1997). The *Burlington Northern* Court articulated a new objective standard for determining what constitutes an "adverse employment action." 548 U.S. at 68. The Court held that an employee demonstrating an adverse employment action must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotations and citations omitted); *see also Lisdahl v. Mayo Found.,* 633 F.3d 712, 720 (8th Cir. 2011).

Ms. Carter alleges that she filed grievances while at AMD regarding disparate treatment, discrimination, harassment, and hostile work environment she allegedly received and experienced at AMD (Dkt. No. 1, ¶¶ 8-18). Further, she alleges that, upon reinstatement which was ordered as a result of her appeal of her grievances and termination, she was placed in a series of positions with materially different work duties and told that she had no possibility for promotion in at least one of those positions (*Id.*, ¶¶ 14-18). From her complaint, it appears that reinstatement occurred on or about October 18, 2016, and that these job assignments occurred shortly thereafter (*Id.*, ¶ 14). Ms. Carter specifically alleges that "[t]he lack of any job assignment was in retaliation, once again, for Plaintiff's protected activity in filing grievances. . . ." (*Id.*, ¶ 15). She also alleges that the duties she was assigned in these positions were nothing like the duties she previously performed prior to her termination and reinstatement (*Id.*, ¶ 18). At this stage of the proceeding, the Court determines that Ms. Carter has sufficiently alleged a retaliation claim against AMD. The

Court denies defendants' motion to dismiss under Rule 12(b)(6) Ms. Carter's retaliation claim against AMD.

## 2. Retaliation Claim Against ADEM

Defendants move to dismiss Ms. Carter's retaliation claim against ADEM claiming that Ms. Carter fails to allege that she engaged in a protected activity while employed at ADEM (Dkt. No. 16, at 6). Although Ms. Carter has not named ADEM as a defendant in this case, the Court construes Ms. Carter's claims against Ms. Owens in her official capacity as Title VII claims against ADEM, the entity Ms. Carter alleges employed Ms. Owens (Dkt. No. 1, ¶ 3).

Defendants assert that Ms. Carter erroneously alleges that ADEM is a division of AMD and that she was transferred by AMD (*Id.*). According to defendants, her claim that ADEM is a division of AMD is demonstrably false as a matter of law. Defendants maintain ADEM cannot be liable for conduct Ms. Carter attributes to and complained about in regard to AMD. Further, Ms. Carter premises her retaliation claim against ADEM on her grievances filed while employed by AMD (Dkt. No. 1, ¶ 23) ("[t]he termination of Plaintiff a [second] time after reinstatement, is in retaliation for her previously filed grievances"). Defendants argue that, because Ms. Carter does not assert that she filed with ADEM any complaints or grievances about treatment she contends she experienced at ADEM, Ms. Carter fails to allege sufficiently facts that plausibly show she engaged in protected activity while employed at ADEM.

According to defendants, the Arkansas General Assembly established ADEM by Act 511 of 1973, as amended, and is codified at Arkansas Code Annotated § 12-75-109 *et seq*. Further, according to defendants, AMD is a constitutional department, Ark. Const. Art. XI, organized and officered by law, Arkansas Code Annotated § 12-60-101 *et seq*. Defendants maintain that ADEM's Director is appointed by the Governor. Ark. Code Ann. § 12-75-109(b). Although

defendants concede that it is possible for a department to be transferred under another, *see* Ark. Code Ann. § 25-2-104-107, such a transfer requires a legislative act, *see, e.g.*, Ark. Code Ann. § 25-38-204, § 25-18-103, § 24-4-750, and there is no statute transferring ADEM under the authority of AMD.

Ms. Carter recognizes that ADEM is not "statutorily or constitutionally a division" of AMD in response to defendants' motion to dismiss (Dkt. No. 10, at 5). However, she maintains that ADEM is "located on Camp Robinson" and that ADEM "staff seemed to know about Plaintiff's issue[s with] AMD, and continued to treat her as an outcast" (*Id.*).

The Court agrees with defendants; Ms. Carter fails to allege sufficiently that ADEM and AMD have a relationship that permits Ms. Carter to hold ADEM liable for retaliating against her on the basis of harassment she contends she experienced while employed at, and that she complained about while employed by, AMD. Although Title VII recognizes various theories of employment, Ms. Carter fails to allege sufficiently facts to support a viable theory here to hold ADEM liable for AMD conduct, given what all parties agree is the legal status of ADEM and AMD under Arkansas law. As a result of these determinations, the Court concludes that Ms. Carter fails to plead sufficiently a retaliation claim against AMD or ADEM based on her termination. The Court also agrees that Ms. Carter has not alleged that she filed with ADEM any complaints or grievances about treatment she contends she experienced at ADEM. Therefore, the Court concludes that Ms. Carter fails to allege sufficiently facts that plausibly show she engaged in protected activity while employed at ADEM.

For these reasons, the Court dismisses without prejudice Ms. Carter's retaliation claim against ADEM, including her claim against Ms. Owens in her official capacity as an employee of ADEM.

### III. Motion To Substitute Party

Defendants have filed a motion for substitution of party (Dkt. No. 22). Defendants represent that, at the time of the commencement of this action, General Berry served as Adjutant General for the ADM (Dkt. No. 22, at 1). However, since the commencement of this action, General Berry is no longer in this position; instead, Major General Kendall W. Penn was appointed as the new Adjutant General for the ADM and assumed command of the ADM on or about August 11, 2019 (Id., at 1-2). Defendants request that Major General Penn in his official capacity be substituted for General Berry in his official capacity as a named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d). Because the Court dismisses General Berry in his official capacity as a defendant in this action for the reasons previously explained in this Order, the Court denies as moot defendants' motion for substitution of party (Dkt. No. 22).

### IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part defendants' motions to dismiss (Dkt. Nos. 5, 16). The Court dismisses without prejudice Ms. Carter's Title VII retaliation claims against defendants in their individual capacities; dismisses Ms. Carter's Title VII claims against General Berry, Ms. Porterfield, and Mr. Crisp in their official capacities as duplicative of her claims against AMD; and dismisses without prejudice Ms. Carter's retaliation claim against Ms. Owens in her official capacity, which this Court construes as a Title VII retaliation claim against ADEM. The Court declines to dismiss Ms. Carter's Title VII retaliation claim against AMD. The Court denies as moot defendants' motion for substitution of party (Dkt. No. 22).

So ordered this the 27th day of September, 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge