IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KAREN CARTER**                                                                                                   **PLAINTIFF**

v.                                                    Case No. 4:18-cv-00444-KGB

**MILITARY DEPARTMENT
OF ARKANSAS,** *et al.*                                                                                       **DEFENDANTS**

**OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by defendant Military Department of Arkansas ("AMD") (Dkt. No. 32). Plaintiff Karen Carter[1] has not responded, and the time to file a response has passed. For the following reasons, the Court grants AMD's motion for summary judgment (*Id.*).

I.   **Factual Background**

In compliance with Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, AMD filed a statement of undisputed facts along with its motion for summary judgment (Dkt. No. 34). Pursuant to Rule 56.1, all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Further, failure to support or address properly the moving party's assertion of fact can result in the fact being considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Because Ms. Carter has not responded to AMD's statement of undisputed facts, AMD's statement of facts is admitted and provides the following factual background unless otherwise noted.

---

[1] Ms. Carter was formerly known as Karen Norris (Dkt. No. 1, at 1).

Ms. Carter filed her first grievance with AMD on April 6, 2015, alleging discrimination, harassment, and hostile work environment (Dkt. No. 33-5, at 15-18). Ms. Carter filed a second grievance with AMD on April 28, 2015, that primarily complained about a ten-day suspension she received after filing her first grievance (*Id.*, at 19-20). Upon returning to work following the suspension, Ms. Carter's supervisor placed her on a six-month performance improvement plan, and on June 8, 2015, AMD presented Ms. Carter with a termination letter for, among other things, non-compliance with the performance improvement plan (Dkt. Nos. 1, ¶ 9; 33-5, at 21-24). Ms. Carter filed a third grievance with AMD regarding her termination (Dkt. No. 33-5, at 25-27). AMD combined the three grievances, adjudicated them together at one hearing, and upheld Ms. Carter's termination (Dkt. Nos. 1, ¶11, 33-5, at 28-30). Ms. Carter appealed the decision to the State Employee Grievance Appeal Panel ("SEGAP") which affirmed on June 27, 2016 (Dkt. Nos. 33-5, at 30-31; 33-7, at 1). Ms. Carter appealed that decision (Dkt. No. 33-7).

Meanwhile, on May 4, 2015, Ms. Carter filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and retaliation occurring between March 30, 2015, and May 4, 2015. The EEOC Charge was assigned No. 493-2015-01015 (Dkt. No. 33-5, at 32-33). Ms. Carter amended EEOC Charge No. 493-2015-01015 on June 8, 2015, to add information regarding the performance improvement plan and her termination (*Id.*, at 34-37). On July 20, 2015, the EEOC issued a Right to Sue Letter regarding Charge No. 493-2015-01015 (*Id.*, at 37-39). In September 2015, Ms. Carter filed a lawsuit regarding EEOC Charge No. 493-2015-01015 (Dkt. No. 33-5 at 40-41). *Norris v. Arkansas Military Department*, Case No. 4:15-cv-569 BSM, Dkt. No. 1 (E.D. Ark. Sept. 11, 2015). The Court dismissed the case without prejudice on April 18, 2018, because Ms. Carter failed to serve

the complaint upon the defendants and because the time for doing so had passed. *Id*. at Dkt. No. 7.

On October 10, 2016, the Chief Fiscal Officer of the State of Arkansas issued an order regarding Ms. Carter's appeal from the SEGAP relating to her three grievances (Dkt. No. 33-7). He determined that Ms. Carter failed to meet her burden of discrimination and that AMD failed to follow its own policy in handling Ms. Carter's termination in June 2015 (*Id*. at 3-5)  The order directed AMD to reinstate Ms. Carter in a division other than DSR in a comparable position to the one she held at the time of her termination, to remove documentation regarding Ms. Carter's grievances and termination from her personnel file and forward proof of removal to her attorney, and to provide a neutral job reference if Ms. Carter sought employment elsewhere (*Id*. at 5-6).

On October 18, 2016, AMD reinstated Ms. Carter to a position with Camp Robinson Department of Public Safety ("DPS") (Dkt. Nos. 33-1; 33-3, ¶ 5; 33-4, ¶ 5, 33-8).  Her title was Human Resources Program Representative, and her pay grade was the same as her previous position (Dkt. Nos. 33-3, ¶ 5; 33-4, ¶ 5).  AMD removed all records pertaining to Ms. Carter's disciplinary and grievances from her personnel file (Dkt. Nos. 33-3, ¶ 6; 33-4, ¶ 6).

As a Human Resources Program Representative in DPS, Ms. Carter's responsibilities included, but were not limited to, the following:  (1) establish and maintain adequate controls to ensure accuracy and timeliness of personnel actions; (2) assist the Deputy Fire Chief by ensuring all new and current supervisors are tracked to see that they meet the Governor's Directive for training and development; (3) ensure coordination for training in order to have new supervisors trained within six months of hire; (4) prepare position requisition forms for new firefighters and submit to the Fire Chief for review and coordination; (5) maintain log to show when position requisition forms are completed and passed to the next level of review; (6) schedule applicant

interview appointments and notify DSR of the interview panel members and interview date(s); (7) prepare applicant interview packets for each interview panel member; (8) assist applicants with completing hiring documents when they arrive for their interview; (9) collect documents once interviews are complete and score the interviews; (10) upload all hiring documents to DSR; (11) collect Fire Department personnel timesheets, review them for accuracy, and ensure they are signed by the employee and supervisor; and (12) provide timesheets to DPS for copying before they are sent to DSR (Dkt. Nos. 33-1, ¶ 4; 33-9).

On November 18, 2016, Ms. Carter filed a Charge of Discrimination with the EEOC that was given the Charge No. 493-2017-00261 (Dkt. No. 33-6).  In Charge No. 493-2017-00261, Ms. Carter alleged "retaliation" took place October 18, 2016 (*Id*.).  Ms. Carter stated in the Charge that she "had no work duties assigned to" her since being placed in the position on or about October 18, 2016, that she had "not received confirmation that [her] record was expunged," and that she was "forced to work under a Supervisor who was involved in [her] previous grievances." (*Id*.). Ms. Carter asserted, "I believe that the above has happened to me in retaliation for filing a previous EEOC charge in violation of Title VII of the Civil Rights Act of 1964, as amended." (*Id*.)   The EEOC issued Ms. Carter a Notice of Right to Sue on April 4, 2018 (Dkt. No. 1, at 9).

On February 6, 2017, DSR reassigned Ms. Carter to the office of the Deputy Chief of Staff Personnel ("DCSPER"), which is the human resources office for all Army National Guard personnel in Arkansas, to fill the position of Administrative Specialist III (Dkt. Nos. (33-2, ¶¶ 3, 8; 33-3, ¶ 8; 33-10).  Ms. Carter voluntarily resigned her position as Administrative Specialist III for DCSPER in July 2017, to accept a position with the Arkansas Department of Emergency Management (Dkt. No.  33-2, ¶ 11; 33-3, ¶ 9).  Ms. Carter was terminated from her position with the Arkansas Department of Emergency Management in January 2018 (Dkt. No.  1, ¶ 21).

On July 5, 2018, Ms. Carter filed her current complaint alleging that on October 18, 2016, she was reassigned to a job with the DPS that had no duties in retaliation for filing grievances (Dkt. No. 1, ¶¶ 14-15).  She also claims her termination in January 2018 was "in retaliation for her previously filed grievances in violation of 42 U.S.C. § 2000e-3" and "[n]egative references previously and currently given by the Military are a reason that Plaintiff is unable to obtain employment with the State of Arkansas, or with private employers." (Dkt. No. 1, ¶¶ 23, 24).

**II.     Legal Standard**

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

### III.   Motion For Summary Judgment

#### A.   Exhaustion of Administrative Remedies

AMD contends that Ms. Carter failed to exhaust her administrative remedies with respect to her Title VII claims. Before an aggrieved party may bring a suit under Title VII that party must first exhaust her administrative remedies. *See* 42 U.S.C. § 2000e-5(b), (e)(1). In order to exhaust her administrative remedies under Title VII, "[a] claimant must timely file an administrative charge with the EEOC." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). Under Title VII, a plaintiff must file an administrative charge within 180 days of the alleged discriminatory incident. 42 U.S.C. § 2000e-5(e)(1).

Generally, because each incident of discrimination or retaliation is a "discrete act," an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006). The plaintiff's charges must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Cottrill*, 443 F.3d at 634 (quoting 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the

charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* (internal citation and quotation omitted). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.*

The Eighth Circuit has determined that, where alleged discriminatory or retaliatory conduct has occurred after an EEOC charge has been filed, "[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are *like or reasonably related to* the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986) (emphasis added). "'We do not require that subsequently-filed lawsuits mirror the administrative charges' as long as 'the sweep of any subsequent judicial complaint' is no broader than 'the scope of the EEOC investigation which could reasonably be expected to grow out of the charge' filed in the EEOC complaint." *Wedow*, 442 F.3d at 674 (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)).

The "like or reasonably related" standard has been narrowed based largely on the reasoning of the Supreme Court in *National Railroad Passenger Corporation v. Morgan*, in which the Court determined that a discrete act of discrimination constitutes a separate actionable employment practice and starts a new clock for filing charges based on it. 536 U.S. 101, 113-14 (2002); *see Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Only discrete acts that

occurred between 180 days prior to the filing of the Charge and the day of Ms. Carter's filing the Charge are actionable. *See Morgan*, 536 U.S. at 114.

Although a plaintiff will be considered to have exhausted his administrative remedies as to allegations that are like or reasonably related to the substance of charges exhausted in his administrative EEOC charge, *Williams v. Little Rock Mun. Water Works*, 218 F.3d 218, 222 (8th Cir. 1994), the plaintiff's allegations must be sufficient to put the employer on notice of the conduct complained of and the general basis of the claim, *Fair v. Norris*, 480 F.3d 865, 866-67 n.2 (8th Cir. 2007).

AMD argues that Ms. Carter's allegations in her complaint that occurred after she filed EEOC Charge No. 493-2017-00261 on November 18, 2016, alleging retaliation on October 18, 2016, are unexhausted (Dkt. No. 36, at 10). In her complaint, Ms. Carter alleges she experienced retaliation in February 2017, when she was reassigned to DCSPER, where she would not be promoted (Dkt. No. 1, ¶¶ 17-18). Further she alleges she was terminated from the position she voluntarily took at Arkansas Department of Emergency Management in January 2018 "in retaliation for previously filed grievances in violation of 42 U.S.C. § 2000e-3" and "[n]egative references previously and currently given by the Military are a reason that Plaintiff is unable to obtain employment with the State of Arkansas, or with private employers." (Dkt. No. 1, ¶¶ 19-24). Ms. Carter's claims related to her reassignment to DCSPER, her termination from the Arkansas Department of Emergency Management, and her inability to obtain employment are based on discrete acts that occurred well after Ms. Carter filed EEOC Charge No. 493-2017-00261 on November 18, 2016, alleging discrimination on October 18, 2016. There is no evidence in the record to suggest that Ms. Carter amended EEOC Charge No. 493-2017-00261 or filed a new EEOC Charge related to the subsequent events that would have put AMD on notice of her

complaints. Accordingly, the Court finds that Ms. Carter failed to exhaust properly her administrative remedies with respect to any conduct that occurred after November 18, 2016, and AMD is granted summary judgment on Ms. Carter's claims related to conduct that occurred after November 18, 2016.

### B.     Statute of Limitations

To the extent Ms. Carter seeks to raise claims of discrimination or retaliation in this lawsuit that were raised in EEOC Charge No. 493-2015-01015 filed May 4, 2015, and amended on June 8, 2015, these claims are barred by the statute of limitations. On July 20, 2015, the EEOC issued a Dismissal and Notice of Rights regarding claims alleged in EEOC Charge No. 493-2015-01015. *See Norris*, 4:15-cv-569 BSM, Dkt. No. 2 at 4-5. The notice informed Ms. Carter that she had 90 days in which to file a lawsuit based on the Charge. While Ms. Carter filed a lawsuit regarding EEOC Charge No. 493-2015-01015, the Court dismissed her case without prejudice on April 18, 2018, because Ms. Carter failed to serve the complaint upon the defendants and because the time for doing so had passed. *Norris*, 4:15-cv-569 BSM, Dkt. No. 7.

A suit filed under Title VII must be brought within 90 days after the receipt of the Notice of Right to Sue issued by the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Williams v. Thomson*, Corp., 383 F.3d 789 (8th Cir. 2004); *Maeqdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051 (8th Cir. 2002). An action may be dismissed, as barred by the statute of limitations, where a plaintiff's own pleadings establish the defense. *McDaniel v. Kraft Glob. Foods*, 632 F. App'x 314, 315 (8th Cir. 2016) (concluding dismissal was proper where plaintiff's own pleadings showed that she brought her lawsuit more than 90 days after receiving a Right-to-Sue Notice from the EEOC and tolling of the limitations period was not warranted); *see also Jessie v. Potter*, 516

F.3d 709, 713 n.2 (8th Cir. 2008) (citing *Varner v. Peterson Farms*, 371 F.3d 1011, 1017-18 (8th Cir. 2004)).

Although the 90-day limitations period is subject to equitable tolling in appropriate circumstances, courts have generally reserved the remedy of equitable tolling for situations in which the reasons for the delay were beyond the control of the plaintiff. *See Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989) (finding that equitable tolling of the 90-day period was not appropriate when the plaintiff did not inform the EEOC of her new address). Ms. Carter does not allege any circumstances that might justify equitable tolling of the 90-day limitations period as applied to her Title VII claims. Based on the record in this case, the Court is aware of no such circumstances.

Additionally, Arkansas Code Annotated § 16-56-126, which gives a plaintiff one year to refile an action after a nonsuit, will not save Ms. Carter's claim. The Arkansas savings statute does not apply to lawsuits brought under Title VII. *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 759 n.2 (8th Cir. 1983) (stating that "[b]ecause Title VII actions are governed by a federal statute of limitations, the Arkansas saving[s] clause is inapplicable" (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946))). Furthermore, the Eighth Circuit has held that, under Title VII, a dismissal without prejudice operates to leave a plaintiff as if no action had been filed. *Id.* (citing *Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1194 (8th Cir. 1976)). Thus, any dismissal of a Title VII case that occurs, as it did here, more than 90 days after the right to sue letter issued is, in substance, a dismissal with prejudice.

The Court finds that any claims alleged in Ms. Carter's complaint regarding EEOC Charge No. 493-2015-01015 are barred by the statute of limitations. The Court grants AMD's motion for summary judgment with respect to those claims. 42 U.S.C. §2000e-5(f)(1).

C. **Retaliation**

AMD argues that it is entitled to summary judgment on any remaining claims because, even if Ms. Carter exhausted her retaliation claim in EEOC Charge No. 493-2017-00261 regarding the position to which she was assigned in DPS on October 18, 2016, she cannot make out a *prima facia* case of retaliation because she did not suffer an adverse employment action (Dkt. No. 36, at 14).

"Title VII makes it 'unlawful . . . for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Brown v. City of Jacksonville*, 711 F.3d 883, 892 (8th Cir. 2013) (quoting 42 U.S.C. § 2000e–3(a)). "To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). Evidence of a Title VII violation is direct if it "establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)). Ms. Carter has not presented direct evidence of a Title VII violation; therefore, the Court will apply the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas*.

Under the *McDonnell Douglas* framework, Ms. Carter bears the initial burden of establishing a *prima facie* case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse

11

action was causally linked to the protected conduct. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011). "[T]he threshold of proof necessary to establish a *prima facie* case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998). If Ms. Carter meets her initial burden, the burden shifts to AMD to "articulate a legitimate, non-retaliatory reason for its action." *Id.* If AMD successfully meets its burden, the burden shifts back to Ms. Carter to "present evidence that (1) creates a question of fact as to whether [AMD's] proffered reason was pretextual and (2) creates a reasonable inference that [AMD] acted in retaliation." *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 880 (8th Cir. 2014). The Supreme Court held retaliation claims brought under Title VII must be proved according to traditional principles of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Musolf v. J.C. Penney Company*, 773 F.3d 916, 919 (8th Cir. 2014).

Ms. Carter alleged in her EEOC Charge that when she was reinstated to a position as Human Resources Program Representative in the DPS on October 18, 2016, she had no work duties assigned to her, she did not receive confirmation that her personnel record was "expunged," and she was "forced" to work under a Supervisor who was involved in her previous grievances (Dkt. No. 33-6, at 1). She asserted that these actions violate Title VII because she contends that AMD was retaliating against her for filing a previous EEOC charge (*Id.*).

In her complaint, Ms. Carter alleges:

On October 18, 2016, the Military issued Plaintiff a Memorandum reassigning her from the Directorate State Resources to the Department of Public Safety ("DPS"). The Military purported to comply with the Order of reinstatement with comparable job and pay. However, the job assigned Plaintiff had no duties. Plaintiff's job title was Human Resources Program Representative. At DPS, Plaintiff did not even have a computer to work with, and no job to perform. Crisp told Plaintiff he "didn't really want you here, and I don't have any work for you to do."

(Dkt. No. 1, ¶ 14).  Ms. Carter further complains that she was "sent to Camp Robinson Airfield with the firefighters, and she sat there, doing nothing.  The lack of any job assignment was in retaliation, once again, for Plaintiff's protected activity in filing grievances." (Dkt. No. 1, ¶ 15).

For the purposes of a Title VII retaliation claim, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015) (quoting *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir. 2007)).  The alleged action must be sufficiently serious, as "'[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not' rise to the level of an adverse employment action." *Id.* at 766-67 (quoting *Clegg,* 496 F.3d at 926); *see also Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) ("A materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. There must be a material change in employment status-a reduction in title, salary, or benefits.") (quoting *Wenzel v. Missouri–American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005)).  The Court can view less serious actions collectively and find that an adverse employment action occurred but only if the cumulative effect of these actions caused the employee to suffer serious employment consequences.  *Id.* at 767.

Ms. Carter alleges her assignment to the Human Resources Program Representative position for the DPS was an adverse employment action.  However, the record before the Court does not support her claim.  *See* Fed. R. Civ. P. 56 (c)(1).  The Court finds based on undisputed evidence in the record that, when Ms. Carter was reinstated to the position of Human Resources Program Representative for the DPS, her job title and pay grade were the same as her previous

13

position; at the time of her reinstatement the position in the DPS was the only human resource position available outside of the Directorate of State Resources; Ms. Carter had assigned job duties as Human Resources Program Representative for the DPS; Ms. Carter was assigned to work at the Aviation Airfield Facility because the Department's main location at Camp Robinson was being renovated; and the DPS provided Ms. Carter a workstation that included a computer and telephone (Dkt. Nos. 33-1, ¶¶ 3-5, 11, 16; 33-3, ¶ 5; 33-4 at ¶¶ 4-6). Further, the Court finds that AMD removed all records pertaining to Ms. Carter's disciplinary and grievances from her personnel file and that no one at AMD provided a negative job reference for Ms. Carter (Dkt. Nos. 33-1, at ¶ 21; 33-2, ¶ 13; 33-3, ¶¶ 6, 10; 33-4, ¶ 4, 10). Finally, the Court also finds that, prior to Ms. Carter's reinstatement in the DPS, Stanley Crisp was a witness at an internal review panel hearing regarding a grievance filed by Carter in 2015, but he was not a party to that grievance (Dkt. No. 33-1, at ¶ 20). When Ms. Carter transferred out of the DPS, Mr. Crisp provided Ms. Carter with an exit appraisal in which he rated Ms. Carter "Above Average" in all duty areas and rated her overall performance as "Above Average." (*Id*., ¶ 18).

No reasonable juror could conclude, based on the undisputed evidence in the record even when that evidence is construed in favor of the nonmoving party Ms. Carter, that Ms. Carter suffered a tangible change in working conditions that produced a material employment disadvantage in order to sustain a claim of retaliation under Title VII. *See Wagner*, 779 F.3d at 766 (8th Cir. 2015) (quoting *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir.2007)). The Court grants AMD's motion for summary judgment on Ms. Carter's retaliation claim related to her placement in the DSR upon her reinstatement on October 18, 2016.

## IV. Conclusion

The Court grants AMD's motion for summary judgment and dismisses Ms. Carter's complaint (Dkt. Nos. 32, 1).  The relief requested is denied.  The Court denies as moot AMD's motion to compel (Dkt. No. 25).

It is so ordered this 19th day of January, 2023.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge